## No. 24-1498

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Kyle Jerome Dalen,
individually and on behalf of all others similarly situated,

Plaintiff – Appellant,

vs.

Jodi Harpstead, Commissioner of the Minnesota Department of
Human Services, in her individual and official capacities,

Defendant – Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
CASE NO. 23-CV-01877-ECT-ECW

## BRIEF OF DEFENDANT – APPELLEE

KEITH ELLISON
Attorney General
State of Minnesota

SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

LEAF MCGREGOR
Assistant Attorney General
Atty. Reg. No. 0389140

SARAH DOKTORI
Assistant Attorney General
Atty. Reg. No. 0403060

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 583-6694 (Voice)
(651) 282-5832 (Fax)
scott.ikeda@ag.state.mn.us
leaf.mcgregor@ag.state.mn.us
aaron.winter@ag.state.mn.us
sarah.doktori@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendant - Appellee*

**SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT**

Plaintiff asserts that to state a violation of the Fourteenth Amendment, he need only plead that he was detained in jail for some amount of time while he was civilly committed as a person posing risk of harm due to mental illness. Because Plaintiff did not allege specific facts about his medical state or conditions of confinement while detained, choosing instead to rest on these sparse pleadings alone, the district court dismissed his claims for violations of the Fourteenth Amendment under each his three theories: (1) deliberate indifference to an objectively serious medical need, (2) punitive conditions of confinement, and (3) unreasonable restraint. The district court was correct to do so, and Plaintiff cites no authority suggesting otherwise. That is hardly surprising because none exists. While it may be possible that being detained in a jail under *specific* conditions may create constitutional violations for *specific* persons with *specific* mental health needs, absolutely no authority suggests that the detention of a civilly committed person for some unspecified period of time in a jail or prison alone constitutes a violation of his constitutional rights.

Defendant does not believe oral argument is necessary, but if the Court would find it valuable, Defendant asks for 15 minutes per side.

# TABLE OF CONTENTS

**Page**

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT ....................i

TABLE OF AUTHORITIES ..................................................................................iv

STATEMENT OF ISSUES ................................................................................1

STATEMENT OF THE CASE..............................................................................2

I.     PLAINTIFF'S COMPLAINT. ...................................................................2

II.    CIVIL COMMITMENT IN MINNESOTA...................................................5

III.   PROCEDURAL HISTORY.......................................................................6

STANDARD OF REVIEW ................................................................................6

SUMMARY OF ARGUMENT ............................................................................7

ARGUMENT ....................................................................................................8

I.     THE DISTRICT COURT PROPERLY HELD THAT PLAINTIFF FAILED TO
       PLAUSIBLY ALLEGE A CLAIM FOR DELIBERATE INDIFFERENCE IN
       VIOLATION OF THE FOURTEENTH AMENDMENT.............................8

       A.     Plaintiff Failed To Adequately Plead An Objectively Serious
              Medical Need Because Civil Commitment Does Not, Without
              More, Establish An Objectively Serious Medical Need. ...................10

       B.     Plaintiff Failed To Adequately Plead Actual Knowledge Of And
              Deliberate Disregard For His Alleged Medical Needs Because
              Civil Commitment Does Not, Without More, Establish Actual
              Knowledge Of An Objectively Serious Medical Need......................12

II.    THE DISTRICT COURT PROPERLY HELD THAT PLAINTIFF FAILED TO
       PLAUSIBLY ALLEGE A CLAIM FOR UNCONSTITUTIONALLY PUNITIVE
       CONDITIONS OF CONFINEMENT. ....................................................16

ii

A.    Plaintiff Failed To Adequately Plead Facts About The Conditions Challenged To Establish Unconstitutionally Punitive Conditions Of Confinement, Given That Detention In Jail While Civilly Committed Does Not Alone Establish Punitive Conditions. .......................................................................17

B.    Plaintiff Failed To Adequately Plead Facts About The Punitiveness Of The Conditions He Experienced. ..............................20

III.   THE DISTRICT COURT PROPERLY HELD THAT PLAINTIFF FAILED TO PLAUSIBLY ALLEGE A CLAIM FOR UNREASONABLE RESTRAINT ...................23

A.    Plaintiff Failed To Plead Facts Suggesting That He Was Restrained In A Relevant Sense Because Detention While Civilly Committed Is Not Restraint Subject To *Youngberg* Analysis. ............................................................................24

B.    Plaintiff Failed To Plead Facts Suggesting That Any Alleged Restraint Failed To Meet Professional Standards. ..............................26

CONCLUSION ................................................................................27

CERTIFICATES OF COMPLIANCE ..................................................29

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................. *passim*

*Bailey v. Feltmann*,
810 F.3d 589 (8th Cir. 2016) ....................................................... 11

*Bailey v. Gardebring*,
940 F.2d 1150 (8th Cir. 1991) ...................................................... 25

*Barton v. Taber*,
820 F.3d 958 (8th Cir. 2016) ....................................................... 15

*Beck v. LaFleur*,
257 F.3d 764 (8th Cir. 2001) ................................................. 20, 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................... 1, 7, 26

*Bell v. Wolfish*,
441 U.S. 520 (1979).................................................. 1, 16, 20, 21

*Briggs v. Okla. ex rel. Okla. Dep't of Human Servs.*,
472 F. Supp. 2d 1304 (W.D. Okla. 2007)...................... 8, 17, 20, 23

*Brown v. Medtronic, Inc.*,
628 F.3d 451 (8th Cir. 2010) ........................................................ 7

*Butler v. Fletcher*,
465 F.3d 340 (8th Cir. 2006) ....................................................... 16

*Carney v. Hess*,
2007 WL 9752816 (E.D. Mo. Jan. 24, 2007) ............................... 11

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989)..............................................................*passim*

*Elizabeth M. v. Montenez*,
    458 F.3d 779 (8th Cir. 2006) ............................................ 18, 25

*Farmer v. Brennan*,
    511 U.S. 825 (1994)........................................................... 14, 15

*Jackson v. Buckman*,
    756 F.3d 1060 (8th Cir. 2014) ............................................... 1, 9

*Jones v. Minnesota Dep't of Corr.*,
    512 F.3d 478 (8th Cir. 2008) ........................................ 9, 11, 12

*Karsjens v. Lourey*,
    988 F.3d 1047 ................................................................ 16, 18, 26

*Karsjens v. Piper*,
    845 F.3d 394 (8th Cir. 2017) ...................................................... 26

*Leonard v. St. Charles Cnty. Police Dep't*,
    59 F.4th 355 (8th Cir. 2023) ....................................................... 9

*Levy v. Ohl*,
    477 F.3d 988 (8th Cir. 2007) ....................................................... 6

*Montin v. Gibson*,
    718 F.3d 752 (8th Cir. 2013) ........................................ 1, 23, 25

*Morris v. Zefferi*,
    601 F.3d 805 (8th Cir. 2010) ..................................................... 18

*Smith v. Copeland*,
    87 F.3d 265 (8th Cir. 1996) ................................................ 18, 19

*Smith-Dandridge v. Geanolous*,
    97 F.4th 569 (8th Cir. 2024) ........................................ 1, 12, 14

*Stearns v. Inmate Servs. Corp.*,
    957 F.3d 902 (8th Cir. 2020) ................................................................. 16, 21

*Strutton v. Meade*,
    668 F.3d 549 (8th Cir. 2012) ..................................................................... 26

*Villanueva v. George*,
    659 F.2d 851 (8th Cir. 1981) ..................................................................... 18

*Youngberg v. Romeo*,
    457 U.S. 307 (1982)............................................................................ *passim*

**STATE STATUTES**

Minn. Stat. § 253B.03, subd. 7 ............................................................... 21

Minn. Stat. § 253B.09, subd. 1 ............................................................. 5, 6

Minn. Stat. § 253B.10 (2023) .................................................................. 2

Minn. Stat. § 253B.10, subd. 1(a) ............................................................ 5

Minn. Stat. § 253B.10, subd. 1(b) ............................................................ 5

Minn. Stat. § 253B.10, subd. 1(c)........................................................ 5, 6, 8

Minn. Stat. § 253B.10, subd. 1(d) ....................................................... 13, 14

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................... 6

# STATEMENT OF ISSUES

1.     Plaintiff's Complaint alleged that he was detained in jail for some time while civilly committed as a person posing risk of harm due to mental illness. Plaintiff did not allege that the Commissioner had physical custody of him at the time of his alleged injury. Were Plaintiff's allegations sufficient to show that the Commissioner was deliberately indifferent to an objectively serious medical need?

> *Jackson v. Buckman*, 756 F.3d 1060 (8th Cir. 2014)
> *Smith-Dandridge v. Geanolous*, 97 F.4th 569 (8th Cir. 2024)
> *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
> *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

2.     Were Plaintiff's allegations that he was detained in jail while civilly committed as a person posing risk of harm due to mental illness sufficient to state a claim for unconstitutional conditions of confinement against the Commissioner?

> *Bell v. Wolfish*, 441 U.S. 520 (1979)
> *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
> *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

3.     Were Plaintiff's allegations that he was detained in jail while civilly committed as a person posing risk of harm due to mental illness sufficient to state a claim for unconstitutionally unreasonable bodily restraint against the Commissioner?

> *Youngberg v. Romeo*, 457 U.S. 307 (1982)
> *Montin v. Gibson*, 718 F.3d 752 (8th Cir. 2013)
> *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
> *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

# STATEMENT OF THE CASE

## I.  PLAINTIFF'S COMPLAINT.

Kyle Jerome Dalen ("Plaintiff") brought this action on behalf of himself and a putative class of people subject to Minnesota Statutes, section 253B.10 (2023) who were "detained in any jail or prison for more than 48 hours after having been ordered civilly committed" because, in his view, that statute required admission to a state-operated treatment facility for class members within 48 hours of commitment. App. 1-2 ¶ 1; R. Doc. 10,[1] at 1-2 ¶ 1; App. 6 ¶ 15; R. Doc. 10, at 6 ¶ 15.  Plaintiff alleged that he was civilly committed to the custody of the Commissioner of the Department of Human Services ("Commissioner") by a November 2022 court order. App. 2 ¶ 3; R. Doc. 10, at 2 ¶ 3.  In April 2023, he alleged, he was arrested, charged in Stearns County criminal file No. 73-CR-23-2528, and jailed.  *Id.*  He also alleged that in April 2023, the state civil commitment court issued an order for continued commitment following a recommitment hearing.  *Id.*  He claimed to have been "only recently" admitted to a state-operated treatment facility at the time he filed his July 2023 Complaint.  *Id.*  Plaintiff did not challenge the lawfulness of the criminal court's order detaining him in Stearns County.  *Id.*  Nor did he allege he would have

---

[1] Plaintiff initially filed his complaint in the Dakota County District Court on May 31, 2023.  R. Doc. 1, at 1.  The Commissioner filed her notice of removal on June 21, 2023.  R. Doc. 1.  On July 4, 2023, Plaintiff filed his First Amended Class Action Complaint ("Complaint").  App. 1-19; R. Doc. 10.

been confined in jail absent the order for detention issued by the Stearns County criminal court. *Id.* He therefore alleged an approximately three-month detention in jail, pursuant to a lawful confinement order, prior to his admission to a state-operated treatment facility. *Id.* Plaintiff claimed that given the fact of his civil commitment as a person posing risk of harm due to mental illness, this detention violated the Fourteenth Amendment.[2] App. 10-13 ¶¶ 36-58; R. Doc. 10, at 10-13 ¶¶ 36-58.

Paragraph three of his Complaint is the sole paragraph in which Plaintiff made allegations specific to his experience. App. 2 ¶ 3; R. Doc. 10, at 2 ¶ 3; App. 1-19; R. Doc. 10. But he made no allegations about the nature or conditions of his confinement in Stearns County, such as where he was held or whether he ever experienced restraint. *Id.* Specifically, he did not plead whether he experienced physical restraint, limitations on his access to outdoor space, limitations on his freedom of movement, or any other type of restriction. *Id.* And while he did allege conditions attendant to detention "including but not limited to the complete lack of mental health treatment and *de minimus* [sic] physical health treatment," App. 13 ¶ 56; R. Doc. 10, at 13 ¶ 56, he did not allege that Stearns County withheld any needed physical health treatment. App. 2 ¶ 3; R. Doc. 10, at 2 ¶ 3. Apart from alleging that he was civilly committed and suffers from "antisocial personality

---

[2] Plaintiff also brought several other claims, the disposition of which he did not appeal.

disorder, narcissistic personality disorder, and chemical dependency," he made no allegations about the state of his mental or physical health during his confinement in Stearns County. *Id.* Specifically, he did not allege that he was experiencing or displaying any particular symptoms during his detention in Stearns County. *Id.* He did generally allege that for individuals "with mental or cognitive health needs . . . prolonged time periods in jail [and associated] conditions and lack of treatment *can* worsen [] symptoms and present a serious risk of harm to them." App. 5-6 ¶ 13; R. Doc. 10, at 5-6 ¶ 13 (emphasis added). But he did not allege *his* time in jail, given *his* mental health needs, actually worsened *his* symptoms. App. 1-19; R. Doc. 10.

Plaintiff claimed that the Commissioner "in her official and individual capacities, implemented, retained, and carried out policies that violated [his] constitutional, statutory, and common law rights." App. 2 ¶ 4; R. Doc. 10, at 2 ¶ 4. Plaintiff also alleged that she "actually knew about [Plaintiff's claimed medical] needs because she receives court orders placing [him] in her custody for examination and treatment of those needs." App. 10-11 ¶ 38; R. Doc. 10, at 10-11 ¶ 38. However, Plaintiff made no allegations regarding what the Commissioner purportedly knew about his medical needs or the severity of those needs at any particular time. *Id.* Plaintiff alleged that not admitting him to a state-operated treatment facility within forty-eight hours reflected "deliberate[] disregard[]" for

these medical needs, though he made no specific allegations about what was being disregarded other than the fact of his civil commitment. *Id.*

## II.  CIVIL COMMITMENT IN MINNESOTA.

Minnesota provides for the civil commitment to state-operated treatment programs of persons who pose risk of harm due to mental illness or have a chemical dependency. Minn. Stat. § 253B.09, subd. 1. In such cases, a court may commit the person with a mental illness or chemical dependency to the custody of the Commissioner, after making certain required factual findings. *Id.* The court is required to issue a warrant committing the patient to the custody of the head of the treatment facility, state-operated treatment program, or community-based treatment program. Minn. Stat. § 253B.10, subd. 1(a). Recognizing that such treatment programs may not always have capacity to meet the needs of all persons committed or referred for treatment, Minnesota requires the Commissioner to prioritize the admission of individuals meeting certain criteria who are committed to her care while in a jail or correctional institution. Minn. Stat. § 253B.10, subd. 1(b). However, it is not until the arrival of the patient at the designated facility that patient is considered "under the control and custody" of the head of the facility or program. Minn. Stat. § 253B.10, subd. 1(c). In other words, being committed to the care the Commissioner is a legal finding required for admission to a state-operated treatment program. Minn. Stat. § 253B.09, subd. 1. Commitment to the care of the

Commissioner does not imply that the Commissioner has custody of the patient. Minn. Stat. § 253B.09, subd. 1; Minn. Stat. § 253B.10, subd. 1(c).

## III. PROCEDURAL HISTORY.

The Commissioner moved to dismiss Plaintiff's Complaint under Rule 12(b)(6). R. Doc. 11. The district court, the Honorable Eric C. Tostrud presiding, granted the Commissioner's motion and dismissed Plaintiff's complaint without prejudice in its order dated January 16, 2024, offering Plaintiff until February 6, 2024, to file a second amended complaint to address the pleading deficiencies identified. App. 52; R. Doc. 42, at 30. The district court explained that if offered this opportunity to Plaintiff because Plaintiff had specifically requested it and had "represent[ed] that any dismissed claims might be conceivably repleaded with success" given purportedly new facts. App. 51; R. Doc. 42, at 29. Plaintiff did not file a second amended complaint. Judgment of dismissal with prejudice was entered on February 8, 2024. App. 54; R. Doc. 47. This appeal followed. App. 55; R. Doc. 49.

## STANDARD OF REVIEW

"This court reviews *de novo* the grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (citation omitted).

A motion to dismiss for failure to state a claim must be granted where the complaint does not allege "enough facts to state a claim to relief that is plausible on its face" rather than merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Courts must accept a plaintiff's specific factual allegations as true but are not required to accept a plaintiff's legal conclusions." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). A complaint falls short where it pleads facts that are merely consistent with a theory of liability but does not permit the court to infer more than the possibility of misconduct. *Iqbal*, 556 U.S. at 679.

## SUMMARY OF ARGUMENT

Plaintiff asserts that his allegations that he was detained in jail on criminal charges during a time that he was civilly committed as a person posing risk of harm due to mental illness were sufficient to state a violation of his constitutional rights. The district court correctly dismissed his claims because no precedent supports his argument that these allegations, without more, were sufficient to state a claim, and Plaintiff did not plead facts about his own experience sufficient to support his claims.

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY HELD THAT PLAINTIFF FAILED TO PLAUSIBLY ALLEGE A CLAIM FOR DELIBERATE INDIFFERENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT.

As a threshold matter, even had Plaintiff stated a claim for deliberate indifference, which as discussed below he did not, that claim would be against Stearns County, not the Commissioner. Plaintiff did not allege that the Commissioner had physical custody of him during the time he alleges injury. App. 1-19; R. Doc. 10; *see also* Minn. Stat. § 253B.10, subd. 1(c) (stating that only after arrival at a state-operated treatment program shall the committed person be "under the control and custody of the head of the facility or program"). And absent physical custody, she had no constitutional obligation to provide him medical care. The "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Only when "the State takes a person into its custody and holds him there against his will, [does] the Constitution impose[] upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199-200; *see also Briggs v. Okla. ex rel. Okla. Dep't of Human Servs.*, 472 F. Supp. 2d 1304, 1313 (W.D. Okla. 2007) ("In the absence of both legal and physical custody, no special

relationship exists, and thus, no attendant affirmative duty to protect exists."). So even if Plaintiff's allegations did state a claim for deliberate indifference, that claim would be against Stearns County, not the Commissioner.

Plaintiff also fails to state a claim for deliberate indifference in violation of the Fourteenth Amendment due to the deficiencies in his pleadings about his medical needs and the Commissioner's knowledge of those needs. To state a deliberate indifference claim, Plaintiff must plausibly allege (1) an "objectively serious medical need"; and (2) "conscious[] disregard" for that known need. *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir. 2023). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008). The deliberate indifference standard "is a difficult standard to meet," as the disregard for a known, objectively serious medical need "must rise to the level of criminal recklessness." *Leonard*, 59 F.4th at 360. "Merely demonstrating that a [] doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065–66 (8th Cir. 2014). Deliberate indifference requires more. *Id.*

Here, Plaintiff failed to plead deliberate indifference because he failed to allege facts about his own condition or what the Commissioner purportedly knew

and disregarded about his condition other than the fact of his commitment and underlying diagnoses.  App. 1-19; R. Doc. 10.  His claim fails because no authority suggests that allegations that he was detained in jail while civilly committed as a person posing risk of harm due to mental illness are, without more, sufficient to state a claim for deliberate indifference on the part of the Commissioner.

### A. Plaintiff Failed To Adequately Plead An Objectively Serious Medical Need Because Civil Commitment Does Not, Without More, Establish An Objectively Serious Medical Need.

Plaintiff claims he adequately pled an objectively serious medical need solely by pointing to the fact of his civil commitment as a person posing risk of harm due to mental illness.  App. Br.,[3] at 5-8.  Not so.  As the district court properly noted, the "health conditions prompting a person's civil commitment *might* be so severe and pervasive that a commitment order itself might establish the presence and scope of an objectively serious medical need for some indefinite, prolonged period," but the sparse pleadings regarding Plaintiff's health conditions and civil commitment order simply did not meet that standard.  App. 44; R. Doc. 42, at 22 (emphasis added). Plaintiff did not plead that a physician had diagnosed an urgent or emergent medical need requiring immediate treatment.  App. 1-19; R. Doc. 10.  Nor did he allege any specific facts about his health or symptoms at the time of his detention in the Stearns County jail that would allow a layperson to "easily recognize the necessity for a

---

[3] "App. Br." refers to Plaintiff's principal brief on appeal.

doctor's attention."[4] *Id.; Jones*, 512 F.3d at 481. Rather, Plaintiff acknowledges that the medical needs at issue were the "medical needs that were addressed in the original commitment order" entered five months prior to his detention, App. Br., at 8, namely Plaintiff's diagnoses with "antisocial personality disorder, narcissistic personality disorder, and chemical dependence." App. 2 ¶ 3; R. Doc. 10, at 2 ¶ 3.

Such mental health diagnoses, without more, do not constitute an objectively serious medical need of the type that can give rise to a claim for deliberate indifference because they alone do not indicate urgency. *See Carney v. Hess*, No. 2:04-CV-92 SNL, 2007 WL 9752816, at *4 (E.D. Mo. Jan. 24, 2007), *aff'd*, 271 F. App'x 543 (8th Cir. 2008) ("A medical need is objectively serious if it is a condition of urgency, one that may produce death, degeneration, or extreme pain."); *see also Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016) (evaluating whether an objectively serious medical need existed based on whether appellant "presented

---

[4] As the District Court noted, Plaintiff was civilly committed in November 2022 but arrested and detained in Stearns County only in April 2023, five months later. App. 43; R. Doc. 10, at 21. The Complaint does not contain allegations regarding the specific nature of Plaintiff's medical needs at the time of November 2022 civil commitment. App. 1-19; R. Doc. 10. Nor does it contain allegations about the specific nature of Plaintiff's medical needs at the time of his detention on criminal charges in April. *Id.* Plaintiff does not argue that the Commissioner had any obligation to admit him to a state-operated treatment facility in November. *Id.* And he does not plead whether his mental health conditions had changed in any way between November 2022 and the following April such that a delay in admission to a state-operated treatment facility could constitute the equivalent of criminal recklessness. *Id.*

medical evidence that he experienced a serious medical need for urgent care at the time of his arrest"). And while the Commissioner does not minimize the seriousness of Plaintiff's alleged underlying mental health conditions, a serious underlying or chronic condition without any urgent or immediate presentation or symptoms is not an "objectively serious medical need." *Cf. Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008) (collecting cases where this Court determined an objectively serious medical need existed where the detainee "exhibited physical symptoms related to known medical issues or to complaints of pain" but not based on known medical issues alone). Because Plaintiff pled no facts about his health at the time of his detention in Stearns County apart from the fact of his commitment and diagnoses, he failed to plausibly allege an objectively serious medical need.

> **B.** **Plaintiff Failed To Adequately Plead Actual Knowledge Of And Deliberate Disregard For His Alleged Medical Needs Because Civil Commitment Does Not, Without More, Establish Actual Knowledge Of An Objectively Serious Medical Need.**

This circuit's precedent requires allegations of actual knowledge to satisfy the deliberate indifference standard. *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024) ("Deliberate indifference . . . requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, [an objectively serious medical need]."). Claiming that a reasonable person would have known or should have known of the medical need is insufficient. *Id.* at 576.

Plaintiff argues that he adequately pled actual knowledge of and deliberate disregard for alleged medical needs solely by alleging that the Commissioner knew he was civilly committed.[5] App. Br., at 9. Plaintiff is wrong. Plaintiff merely alleged that the Commissioner had received a copy of an order committing him to her custody. App. Br., at 8; App. 10-11 ¶ 38; R. Doc. 10, at 10-11 ¶ 38. And Plaintiff did not allege that the Commissioner had any knowledge of his conditions or symptoms other than the fact of his commitment and diagnoses. App. 1-19; R. Doc. 10. Because, as noted above, the fact of commitment as a person posing risk of harm due to mental illness does not, without more, constitute an objectively serious medical need, it is simply not clear what medical need the Commissioner allegedly disregarded, much less how her doing so might reflect criminal recklessness.

Plaintiff now claims that because Minnesota Statutes, section 253B.10, subdivision 1(d) provides that records be sent to the Commissioner on request upon a patient's referral to the Commissioner for admission, the Commissioner "knew not only that [Plaintiff] suffered from serious medical needs, but what exactly those needs [were]." App. Br., at 10. The Commissioner does not dispute that she may

_____

[5] As discussed above, Plaintiff failed not only to plead knowledge sufficient to state a deliberate indifference claim, he also failed to plead even that the Commissioner had custody of him at the time of injury. App. 1-19; R. Doc. 10. His claim fails for that independent reason. *See DeShaney*, 489 U.S. at 199-200; *Briggs*, 472 F. Supp. 2d at 1313.

receive medical records pursuant to section 253B.10, subdivision 1(d). But again Plaintiff's pleadings doom his argument here because Plaintiff did not plead what "exactly those needs [were]," how they were reflected in his medical records, that the Commissioner actually received the records, or how those records alone might establish deliberate indifference. App. 1-19; R. Doc. 10; *see also Smith-Dandridge*, 97 F.4th at 577 (exposure to medical form detailing prescriptions, diagnoses, and history of suicide attempts was, without more, insufficient to establish knowledge of objectively serious medical need of risk of suicide). That the Commissioner is statutorily entitled to receive medical records for individuals committed to her care does not relieve Plaintiff from his obligation to plead more than the conclusory allegation that she knew of an objectively serious medical need. *Ashcroft v. Iqbal*, 556 U.S. 662 at 678.

Plaintiff bafflingly relies on *Farmer v. Brennan*, 511 U.S. 825 (1994) for the proposition that, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In *Farmer*, a transsexual inmate who was moved to a general population prison and raped asserted that prison officials had "actual knowledge" of the potential danger, given knowledge of the violent environment, history of assaults, and fact Plaintiff "project[ed] feminine characteristics." *Id.* at 831. The Court remanded for additional findings of fact about whether defendants

drew the inference that the inmate was at grave risk when placed in that setting. *Id.* at 847-48. Here, Plaintiff has neither alleged what substantial risk of serious harm purportedly existed, nor what predicate facts the Commissioner purportedly knew that *actually led* her to the conclusion that Plaintiff was at risk of a particular serious harm. App. 1-19; R. Doc. 10. Accordingly, if relevant at all, *Farmer* supports the district court's conclusion that Plaintiff failed to adequately plead that the Commissioner knew of and disregarded an objectively serious medical need.

*Barton v. Taber*, 820 F.3d 958 (8th Cir. 2016), similarly undermines Plaintiff's argument. There, detailed allegations regarding Barton's intoxication (including unresponsiveness, inability to walk, and the fact that an officer checked Barton for a pulse) were sufficient for a finding that Barton showed "obvious signs" of medical need sufficient to establish both the objective seriousness of that need and the officer's knowledge of it. *Id.* at 965. The officer was not entitled to qualified immunity where he disregarded those "obvious signs," leaving Barton without medical attention in a cell where he died due to an underlying heart condition, even though the officer was not aware of the heart condition. *Id.* at 963. In contrast, Plaintiff made no factual allegations about what "obvious signs" in terms of his behavior or symptoms while he was in Stearns County existed and were purportedly disregarded by the Commissioner. App. 2 ¶ 3; R. Doc. 10, at 2 ¶ 3. The district court properly dismissed his claim.

## II. THE DISTRICT COURT PROPERLY HELD THAT PLAINTIFF FAILED TO PLAUSIBLY ALLEGE A CLAIM FOR UNCONSTITUTIONALLY PUNITIVE CONDITIONS OF CONFINEMENT.

Conditions of confinement claims brought by civilly committed persons in the Eighth Circuit are evaluated under the *Bell v. Wolfish*, 441 U.S. 520 (1979) standard, namely whether the challenged condition "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (quoting *Bell*, 441 U.S. at 538). A detainee may show either: (1) that the challenged conditions were intentionally punitive; or (2) that "the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020).

Here, Plaintiff failed to allege unconstitutionally punitive conditions because he pled no specific facts about the conditions he experienced other than that he was detained while civilly committed as a person who poses risk of harm due to mental illness and did not receive mental health care during that time. App. 1-19; R. Doc. 10.[6] These allegations were so sparse as to preclude any assessment of the

---

[6] To the extent that Plaintiff challenges only the lack of mental healthcare provided during his detention in Stearns County, his claim is properly analyzed under the deliberate indifference rather than the *Bell v. Wolfish* standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) (deliberate indifference standard applies where claim is "not based on a pretrial detainee's right to be free from punishment but [rather] grounded in principles of safety and general well-being"). As addressed (Footnote Continued on Next Page.)

relationship between his conditions and any government purpose for those conditions. *Id.* His claim fails because no authority suggests that allegations that he was detained while civil committed as a person posing risk of harm due to mental illness, without more, become sufficient to state a claim for unconstitutionally punitive conditions of confinement after some unspecified time.

**A.** **Plaintiff Failed To Adequately Plead Facts About The Conditions Challenged To Establish Unconstitutionally Punitive Conditions Of Confinement, Given That Detention In Jail While Civilly Committed Does Not Alone Establish Punitive Conditions.**

The district court properly dismissed Plaintiff's claims because he failed to make clear what conditions of confinement he challenged. App. 45; R. Doc. 10, at 23. Plaintiff did not plead anything about the conditions under which he was confined in Stearns County other than that he lacked access to mental healthcare and apparently lacked access to some physical healthcare, though he did not specify what needed physical healthcare, if any, he was not provided. App. 2 ¶ 3; R. Doc. 10, at 2 ¶ 3; App. 13 ¶ 56; R. Doc. 10, at 13 ¶ 56. But given that Plaintiff has no right to mental health treatment for the illness that triggered his involuntary confinement,

---

above, Plaintiff's claims fail under the deliberate indifference standard. And under either standard, the claims fail because Plaintiff did not plead that the Commissioner had custody of him at the time of injury and was therefore legally responsible for his conditions. *See DeShaney*, 489 U.S. at 199-200; *Briggs*, 472 F. Supp. 2d at 1313. Like his deliberate indifference claim, any claim for unconstitutionally punitive conditions of confinement would be against Stearns County jail, not the Commissioner. *Id.*

*see, e.g.*, *Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006), the district court was correct that his pleadings do "not [make] clear what conditions are being challenged." App. 45; R. Doc. 10, at 23.

Plaintiff now argues that when considering the "totality of the circumstances" alleged, he adequately stated a claim. App. Br., at 11. He cites *Karsjens v. Lourey* for the unremarkable proposition that courts may consider the totality of the circumstances when assessing whether conditions are punitive. *Id.* (citing *Karsjens* 988 F.3d 1047, 1053 (8th Cir. 2021)). But cases collected in *Karsjens* lay bare Plaintiff's pleading deficiencies and confirm that, even considering the totality of the circumstances alleged, Plaintiff has failed to state a claim. For instance, in *Villanueva v. George*, 659 F.2d 851 (8th Cir. 1981), which Plaintiff also relies upon, the plaintiff challenged conditions as excessive to the interest in maintaining security where he was held in a cell measuring six feet by six feet that was infested with insects, was required to eat all his meals in his cell, was permitted out of his cell for approximately fifteen minutes every second or third day, found hair and roaches in his food, and was permitted only one telephone call and one non-contact visit per week. *Id.* at 853. In *Morris v. Zefferi*, 601 F.3d 805 (8th Cir. 2010), the plaintiff challenged as excessive to the penological interest in preventing his escape his transport in a "small, unsanitary dog cage for the ninety-minute drive . . . with no compelling urgency and other options available." *Id.* at 811; *see also Smith v.*

*Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (affirming dismissal after considering totality of alleged circumstances including exposure to "raw sewage," and "the stench of [] feces and urine for those four days"). The conditions challenged in these cases, regardless of whether they ultimately met the high bar for a conditions of confinement claim, were expressly pleaded and severe enough to be ascertainable to the courts.

Plaintiff, in contrast, acknowledges that he does not challenge any specific conditions he experienced but rather "the normal conditions" of detention. App. Br., at 12 ("Plaintiff does not assert that there was some uniquely punitive condition in the jail where he was detained"). He claims the totality argument saves him because the "normal" conditions of detention become unconstitutionally punitive after a certain unspecified period. *Id.* But Plaintiff has still failed to plead both what he considers the "normal" conditions and what time period in detention he challenges, instead alleging in conclusory fashion that the "conditions of [Plaintiff's] confinement demonstrate that [his] confinement is punitive." App. 12 ¶ 46; R. Doc. 10, at 12 ¶ 46. Such conclusory allegations[7] are insufficient to state a claim

---

[7] The district court gave Plaintiff the opportunity to amend his Complaint to remedy these pleading deficiencies and include any specific facts about conditions experienced. App. 52; R. Doc. 42, at 30. Though Plaintiff specifically requested the opportunity to replead, App. 51; R. Doc. 42, at 29, Plaintiff did not amend and instead filed this appeal, suggesting that he was unable to plead additional facts regarding purported punitive conditions because none existed.

under the *Bell v. Wolfish* standard.  *See Bell*, 441 U.S. at 538 (courts assess claims related to "*particular* [challenged] restrictions and conditions accompanying pretrial detention") (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. at 678.

Finally, even had Plaintiff alleged unconstitutionally punitive conditions of confinement, which he did not, he would still not have stated a claim against the Commissioner, who he did not allege had custody of him at the time he experienced those conditions or determined the conditions in the Stearns County jail.  App. 1-19; R. Doc. 10; *see e.g.*, *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (requiring personal involvement to state a section 1983 claim); *DeShaney*, 489 U.S. 199-200 (finding no duty to provide for plaintiff's well-being where plaintiff was not in physical custody of defendant); *Briggs*, 472 F. Supp. 2d at 1313.

## B.    Plaintiff Failed To Adequately Plead Facts About The Punitiveness Of The Conditions He Experienced.

The district court properly dismissed Plaintiff's claim for the independent reason that he failed to plead facts showing why the conditions he did plead, confinement in jail while civilly committed as a person posing risk of harm due to mental illness for some unspecified period, were unconstitutionally punitive. App. 45-46; R. Doc. 10, at 23-24.  Even accepting as true Plaintiff's assertion that confinement in a jail is detrimental to a civilly committed person, Plaintiff did not plead facts suggesting that the jail conditions he encountered were excessive to any legitimate government purpose, as required to make them unconstitutionally

punitive. *Id.*; *see Stearns*, 957 F.3d at 907. Rather, despite his protests, Plaintiff makes a per se argument – after some undefined period, confinement in jail while under civil commitment order somehow just becomes "unconstitutionally punitive" – even in the absence of any change to the conditions, health of confined person, or purpose of confinement. App. Br., at 12. His argument appears to be that he can state a claim for unconstitutionally punitive conditions of confinement regardless of the conditions actually experienced and regardless of the government purpose at issue. *Id.* That is not the law. *See Bell*, 441 U.S. at 539.

Punitiveness is assessed by considering the relationship of challenged conditions, which he did not plead, to a government purpose, which he does not identify. *See Bell*, 441 U.S. at 539 ("[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment . . . ."); *Stearns*, 957 F.3d at 907. Plaintiff does not allege any facts suggesting that his detention in Stearns County was arbitrary or purposeless. App. 1-19; R. Doc. 10. Nor could he where he did not challenge the validity of the criminal court's confinement order or dispute the Commissioner's interest in admitting him only to a facility able to provide "proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary." *Id.*; Minn. Stat. § 253B.03, subd. 7. Plaintiff's conclusory allegations that "[t]here is no

legitimate purpose to letting [him] languish in jail, and the severe harm done to [him] is grossly excessive to any legitimate government purpose" were insufficient to state a claim. App. 12 ¶ 47; R. Doc. 10, at 12 ¶ 47; *Ashcroft v. Iqbal*, 556 U.S. at 678.

Finally, as the district court pointed out, if Plaintiff were correct that detention of a civilly committed person with mental health diagnoses per se constituted unconstitutional punishment, "every civilly committed person jailed on criminal charges" would be "subject to punitive confinement conditions." App. 46; R. Doc. 10, at 24. Plaintiff now clarifies it is his view that this becomes true for all such persons after an unspecified period. App. Br., at 12. But the district court's point in response remains the same. "No case or other authority has been cited or independently identified that might support this theory." App. 46; R. Doc. 10, at 24. And the theory would have tremendous implications for the many jurisdictions in this Circuit where state-operated treatment facilities lack capacity to treat all those who need their services. Specifically, if the agency lacks capacity to admit a civilly committed person being detained in jail to a treatment facility, Plaintiff's theory suggests that the civil committee must be entitled to *release* for the agency to avoid liability for a constitutional violation, even if the agency lacks legal authority to order such release from a lawful confinement order.

### III. THE DISTRICT COURT PROPERLY HELD THAT PLAINTIFF FAILED TO PLAUSIBLY ALLEGE A CLAIM FOR UNREASONABLE RESTRAINT.

Civilly committed persons hold a "protected liberty interest to be free from unnecessary bodily restraint" under the Due Process Clause. *Montin v. Gibson*, 718 F.3d 752, 755 (8th Cir. 2013). The constitutionality of such a challenged bodily restraint is evaluated under the *Youngberg v. Romeo*, 457 U.S. 307 (1982) "professional judgment" standard which provides for "great deference" to professional judgments about necessary and appropriate efforts to avoid unnecessary restraint. *Id.* Here, Plaintiff failed to state a claim for unreasonable restraint in violation of the Due Process Clause because he failed to allege facts about how, if at all, he was bodily or physically restrained while in the Stearns County jail[8] and because he failed to plead what professional standards were not met with respect to any restraint alleged. App. 1-19; R. Doc. 10. His claim fails because no authority suggests that detention during civil commitment, without more, constitutes unreasonable restraint on the part of the Commissioner.

---

[8] As with his prior two claims, this claim also fails for the independent reason that he never alleged that the Commissioner had custody of him at the time of his alleged injury. Any possible claim for unreasonably restraint would be against the entity imposing that restraint, Stearns County jail or particular officers there, not the Commissioner. *See Beck v. LaFleur*, 257 F.3d at 766; *DeShaney*, 489 U.S. at 199-200; *Briggs*, 472 F. Supp. 2d at 1313.

**A. Plaintiff Failed To Plead Facts Suggesting That He Was Restrained In A Relevant Sense Because Detention While Civilly Committed Is Not Restraint Subject To *Youngberg* Analysis.**

In his Complaint, Plaintiff alleges the Commissioner "abridged [his] freedom from bodily restraint." App. 13 ¶ 54; R. Doc. 10, at 13 ¶ 54. But as the district court properly held, Plaintiff "allege[d] no facts describing whether or how [he] . . . was bodily restrained in a *relevant* sense." App. 46-47; R. Doc. 10, at 24-25 (emphasis added). Plaintiff did not allege bodily restraint, lack of access to recreation areas, lack of access to outside areas, or any other specific facts about the physical restraints or restrictions experienced. App. 1-19; R. Doc. 10. Apart from access to mental health treatment, Plaintiff's Complaint did not even specify how in his view he was restrained in Stearns County in a manner different than in the secure treatment facility to which he sought access. *Id.*

Plaintiff now claims that the district court erred in dismissing this claim because he alleged "unnecessarily extended detention and the attendant conditions, including but not limited to the complete lack of mental health treatment and *de minimus* [sic] physical health treatment." App. Br., at 15 (citing App. 13 ¶ 56; R. Doc. 10, at 13 ¶ 56). In other words, Plaintiff attempts to locate an alleged restraint in either (a) the length of detention in a jail setting prior to admission to a state-operated treatment facility, or (b) the absence of mental health treatment in the jail setting. *Id.* Neither attempt to recast his claim succeeds.

As the district court pointed out, Plaintiff "cite[d] no authority to support the idea that pretrial detention in a jail without anything more is a 'restraint' susceptible to *Youngberg* analysis." App. 47; R. Doc. 10, at 25. It is not, and no authority suggests that it becomes so at some unspecified time. *See Montin*, 718 F.3d at 755 (finding that restraints that are "merely an incident of the fact of commitment" are not the type of restraint subject to analysis under *Youngberg*); *Youngberg*, 457 U.S. at 319 (finding a narrow interest in providing civil committees "minimally adequate or reasonable training to ensure safety and freedom from undue restraint"). Because Plaintiff identified no restraints different than those in the setting where he claimed he was entitled to be, he failed to state a claim for unreasonable restraint. *Id.*

Nor does the absence of mental health treatment while detained create a claim under *Youngberg*. First, the presence or absence of mental health treatment cannot, even considered in the light most favorable to Plaintiff, be plausibly construed as an allegation of any kind of restraint. Second, to the extent Plaintiff asserts that his right to freedom from unnecessary restraint under *Youngberg* somehow confers a right to treatment in an inpatient setting, this Court has expressly stated that no due process right to treatment in an inpatient setting exists. *Bailey v. Gardebring*, 940 F.2d 1150, 1153 (8th Cir. 1991) ("We turn first to Bailey's asserted right to treatment. . . [he] simply does not have the constitutional right he claims."); *Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006) (rejecting a claim of a

"due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement."); *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (same); *Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017) (same); *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021) (same). Accordingly, Plaintiff failed to plead restraint subject to *Youngberg* analysis.

### B. Plaintiff Failed To Plead Facts Suggesting That Any Alleged Restraint Failed To Meet Professional Standards.

Even if Plaintiff had alleged restraint subject to analysis under the *Youngberg* standard, which he did not, he still failed to allege any facts suggesting that any restraint was such a departure from professional judgment to create a claim under *Youngberg*. App. 1-19; R. Doc. 10. Plaintiff points to his allegation that the challenged restraint is "such a substantial departure from professional judgment, practice, and standards as to demonstrate" that it was "not actually based on professional judgment." App. Br., at 15 (citing App. 13 ¶ 56; R. Doc. 10, at 13 ¶ 56). But Plaintiff does not bother to plead anything at all about what professional judgment requires in this setting, much less how his conditions constituted such a departure. App. 1-19; R. Doc. 10. And asserting such a "formulaic recitation of the elements" required to state a claim under *Youngberg* will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The district court correctly dismissed Plaintiff's claim.

# CONCLUSION

Plaintiff's claims that his detention while civilly committed as a person posing risk of harm due to mental illness violated the Due Process Clause fail because Plaintiff failed to plead even minimal facts about (1) his health or symptoms at the time of commitment, (2) the conditions of his detention, (3) what the Commissioner knew about his health or the conditions of his detention, and (4) what professional judgment required with respect to his detention. Each claim collapses to an argument that detention in jail for some unspecified period while civil committed violates Due Process. No precedent in this Circuit supports such an argument. This Court should affirm the district court's dismissal.

Dated: May 29, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Sarah Doktori**
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

LEAF MCGREGOR
Assistant Attorney General
Atty. Reg. No. 0389140

SARAH DOKTORI
Assistant Attorney General
Atty. Reg. No. 0403060

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 583-6694 (Voice)
(651) 282-5832 (Fax)
scott.ikeda@ag.state.mn.us
leaf.mcgregor@ag.state.mn.us
aaron.winter@ag.state.mn.us
sarah.doktori@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendant – Appellee*

## CERTIFICATE OF COMPLIANCE
## WITH FRAP 32

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,946 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.

<u>**s/ Sarah Doktori**</u>
SARAH DOKTORI
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE
## WITH 8th Cir. R. 28A(h)(2)

The undersigned, on behalf of the party filing and serving this brief, certifies

that the brief has been scanned for viruses and that the brief is virus-free.


**s/ Judy Fusco**
Judy Fusco

***Dalen v. Harpstead***
**Eighth Circuit Court File No. 24-1498**

## CERTIFICATE OF SERVICE

I certify that on May 29, 2024, I electronically submitted the Brief of Defendant-Appellee to the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the NextGen CM/ECF system.

Participants in the case are registered CM/ECF users and will be served by the NextGen CM/ECF system.

Dated: May 29, 2024

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Sarah Doktori**
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

LEAF MCGREGOR
Assistant Attorney General
Atty. Reg. No. 0389140

SARAH DOKTORI
Assistant Attorney General
Atty. Reg. No. 0403060

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 583-6694 (Voice)
(651) 282-5832 (Fax)
scott.ikeda@ag.state.mn.us
leaf.mcgregor@ag.state.mn.us
aaron.winter@ag.state.mn.us
sarah.doktori@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendant – Appellee*

|#5795684-v1